Alan Van Praag, Esq.
EATON & VAN WINKLE LLP
3 Park Avenue
New York, New York 10016
212.779.9910
avanpraag@evw.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
BRITISH MARINE PLC,

                       Plaintiff,

           -against-

AAVANTI SHIPPING & CHARTERING LTD.
(a/k/a AAVANTI CHARTERING LIMITED),
ANIK INDUSTRIES, LTD. (f/k/a MADHYA
PRADESH GLYCHEM INDUSTRIES LTD.),
and RUCHI SOYA INDUSTRIES LTD.

                       Defendants.
------------------------------------------------------------------------x

Case No.: 13-cv-00839 (BMC)
ECF Case

**DECLARATION OF ALAN VAN PRAAG IN SUPPORT OF MOTION BY ORDER TO SHOW CAUSE TO HOLD GARNISHEE IN CONTEMPT AND FOR <u>RELATED RELIEF</u>**

      ALAN VAN PRAAG, Esq., pursuant to the provisions of 28 U.S.C. § 1746, declares and states as follows:

      1.    I am a partner with the firm of Eaton & Van Winkle LLP ("EVW" or the "firm"), counsel for Plaintiff British Marine PLC ("British Marine" or "Plaintiff"). The nature of the within motion to hold Garnishee Wego Chemical & Mineral Corp. ("Wego" or the "Garnishee") in contempt is such that the relevant evidence is comprised of orders issued by the Court, papers filed with the Court, papers served on the Garnishee by our firm, papers received by our firm from the Garnishee, communications to me and to our office from the Garnishee's attorney, documents filed by the parties, and actions of myself and my firm. Consequently, consistent with

the Court's Individual Practices, I make this Declaration based upon my personal knowledge and my review of the file maintained by my office and in it I introduce and authenticate documents for which authentication is not in issue. Also filed in support of this motion is the declaration of my partner, Edward Floyd, dated, August 20, 2013, who provides information within his personal knowledge and our firm's staff and records regarding matters relating to the initial service of papers on Wego.

2.  This Declaration is made pursuant to the Court's Order entered July 8, 2013, by docket entry of that date with reference to Docket No. 25, authorizing British Marine to "submit an Order to Show Cause for Contempt and Other Relief:" in support of the within motion by order to show cause for an order:

>   (a)  Holding Wego liable for civil contempt for violating the Court's Order for Issuance of Process of Maritime Attachment and Garnishment dated February 20, 2013 (Dkt. No. 7) (the "Attachment Order")
>
>   >   (1)  by paying to Defendant Ruchi Soya Industries Ltd. ("Ruchi") out of the jurisdiction debts attached by the Attachment Order;
>   >
>   >   (2)  by answering falsely the initial interrogatories served with the Attachment Order and the Process of Maritime Attachment and Garnishment ("PMAG") under Rule B(3)(a); and
>   >
>   >   (3)  by intentionally failing to comply with the terms of the Attachment Order by not answering the interrogatories under oath as required by Rule B(3)(a);

(b) Directing Wego to pay into the registry of the Court the amount of $116,870.00 which is the amount that has been shown to date to have been paid to Defendant Ruchi after having been attached;

(c) Compelling Wego to re-serve its answers to the Initial and First Supplemental Interrogatories described herein but under oath;

(d) Making an evidentiary finding by adverse inference deeming payment to have been made by Wego to Ruchi for the shipment on January 29, 2013 totaling $29,217.50 and requiring payment of that amount into the registry of the Court; or, alternatively, authorizing further discovery regarding the January 29, 2013 shipment and directing Wego to respond to such further discovery requests as Plaintiff may serve including, but not limited to, answering under oath the previously served Second Supplemental Interrogatories described below;

(e) Ordering Wego to respond to such discovery requests as Plaintiff may serve regarding the purchase orders dated April 9 and 16, 2013 which total $56,807.50, including answering under oath the Second Supplemental Interrogatories;

(f) Awarding to Plaintiff the costs of this motion and such other costs as were incurred by Plaintiff due to Wego's contempt; and

(g) Awarding such other and further relief as the Court may deem appropriate and such other sanctions as the Court may deem appropriate including finding Wego to be in criminal contempt of the Court and ordering such further sanctions in relation thereto as may be appropriate in the Court's judgment.

3. By way of background, on February 14, 2013, Plaintiff filed the Verified Complaint in Admiralty. On February 20, 2013, the Court issued an Order Appointing Person to Serve Process, the Attachment Order, and the PMAG. (Docket Nos. 6, and 7, respectively.)

4. On February 21, 2013, Plaintiff made initial service on Garnishee Wego of the Attachment Order and the PMAG. A copy of the affidavit of service for initial service of the aforementioned documents is annexed hereto as Exhibit 1. Thereafter, Plaintiff made supplemental service on Wego of the Attachment Order and the PMAG by facsimile and/or personal delivery on every business day from February 21, 2013 through the present, the last such date prior to the filing of this motion being today, August 20, 2013. A copy of each of the affidavits of service for supplemental service on Wego by facsimile and/or personal delivery from February 21, 2013 through the present is annexed hereto as Exhibit 2.

5. On February 21, 2013, pursuant to Rule B(3)(a), Plaintiff served Wego with interrogatories (the "Initial Interrogatories") with the Attachment Order and the PMAG. A copy of the Initial Interrogatories is annexed hereto as Exhibit 3. On or about March 12, 2013, Wego responded to the interrogatories, however, Wego's responses were not made under oath. A copy of Wego's responses to the Initial Interrogatories is annexed hereto as Exhibit 4.

6. Among other things, Wego's March 12, 2013 unsworn responses to the Initial Interrogatories stated that "NO [sic], Wego does not have property either tangible or intangible, financial instruments, collateral or any other property belonging to defendants in our possession, custody or control as described in Interrogatory No. 1." (Ex. 4 ¶ 1.)

7. In its March 12, 2013 response to the Initial Interrogatories, Wego also stated that "Wego purchases chemical product from Ruchi Soya from time to time. Terms of purchase are cash against documents." (Ex. 4, ¶ 2.)

4

8. After reviewing the information obtained and upon further investigation, on or about April 11, 2013, Plaintiff served Wego with Supplemental Interrogatories to Garnishee dated April 10, 2013 (the "First Supplemental Interrogatories"). A copy of the First Supplemental Interrogatories is annexed hereto as Exhibit 5.

9. On or about April 30, 2013, Wego sent Plaintiff its response to the First Supplemental Interrogatories (the "4/30/13 Response"). Wego's responses were not made under oath. A copy of Wego's unsworn 4/30/13 Response is annexed hereto as Exhibit 6. Wego attached spreadsheets as part of its 4/30/13 Response. The spreadsheets covered three time periods: (1) January 1, 2012 – February 13, 2013 (identified as Exhibit A to Wego's 4/30/13 Response); (2) February 13, 2013 – April 29, 2013 (identified as Exhibit B to the 4/30/13 Response); and (3) "outstanding purchase orders for goods that have not shipped from defendant" (identified as Exhibit C to the 4/30/13 Response). Wego's 4/30/13 Response also included, as Exhibit D, a sample commercial invoice from Ruchi Soya. (Wego's exhibits, as sent to us, were labeled in handwriting with circled letters in the upper-right corner of the first page of each exhibit. For ease of reference, and consistent with the Court's Individual Practices, side-tabs have been added to indicate them in the hard copies of this Declaration.) The spreadsheets annexed to Wego's 4/30/13 Response showed that several transactions occurred, in whole or in part, after service of the Attachment Order and the PMAG on Wego, including the following:

(a) Exhibit B to the 4/30/13 Response identified transactions associated with purchase orders numbered 21663 and 21664 for which the total cost was $116,870.00. The lines for those transactions include entries providing "Invoice No[s]" and "Date[s]." Under those headings for each of the two purchase orders is handwritten "Rec'd 4/5/13," indicating that the cargoes were received on April 5, 2013;

5

      (b)      Exhibit C to the 4/30/13 Response identified transactions with identifying numbers in a column headed "Trans No" which appear to be in the same sequence as the purchase order numbers in Exhibit B and which are numbered 22481 and 22547. These are described as "open orders" for which the total estimated cost is $56,807.50 and for each of which the "Req Ship Date" was April 30, 2013; and

      (c)      Exhibit A to the 4/30/13 Response identified a transaction associated with purchase order 21626 for which the total cost was $29,217.50. The date shown under the "Date" column for that transaction is January 29, 2013.

10.      Based upon a review of the information disclosed by Wego, it was evident to me that Wego incurred debts (or maintained outstanding debts) owed to Defendant Ruchi after service of the Attachment Order and the PMAG. It is clear that some cargoes were received, and some orders for cargoes were placed, by Wego after service of the Attachment Order and the PMAG. Accordingly, Plaintiff notified Wego by letter dated April 30, 2013, of its obligation pursuant to the Attachment Order and the PMAG to restrain all such property. A copy of Plaintiff's letter to Wego is annexed hereto as Exhibit 7.

11.      On May 1, 2013, Stuart M. Steinberg, Esq., counsel for Wego, and I spoke on the phone regarding Plaintiff's April 30, 2013 letter. During the course of the call, Mr. Steinberg described Wego's business practices with respect to the payment of goods. He stated that Wego prepaid for all goods they ordered. However, in Wego's March 12, 2013 response to the Initial Interrogatories, Wego stated that the "[t]erms of purchase are cash against documents." (Ex. 4, ¶ 2.) As a matter of industry practice, such terms call for payment after presentation of shipping documents, including a bill of lading.

12. Nonetheless, during my conversation with Mr. Steinberg, he declined to provide any supporting documentation regarding Wego's procedures for paying for goods purchased from Ruchi. I then reminded Mr. Steinberg that if Wego had any outstanding debts, or incurred additional debts, owed to Defendant Ruchi on or after service of the PMAG on February 21, 2013, that such debts had been attached and should be restrained. I further explained that, in the event any such payments had been made to Defendant Ruchi during the concerned time period, then Plaintiff would seek further relief from the Court.

13. Mr. Steinberg, on behalf of Wego, sent a follow-up letter on or about May 2, 2013, acknowledging receipt of the April 30, 2013 letter. A copy of the May 2, 2013 letter is annexed hereto as Exhibit 8. Mr. Steinberg wrote in that letter in part:

> Please be advised that it is Wego's position that it holds no such property nor has it held such property from the date the Order (as described in your letter) was served.

14. On May 15, 2013, Plaintiff served Wego with its Second Supplemental Interrogatories, a copy of which is annexed hereto as Exhibit 9. Annexed hereto as Exhibit 10 are copies of the FedEx tracking updates showing that the Second Supplemental Interrogatories were received by each of Wego and Wego's counsel's office on May 16, 2013. The deadline for Wego to respond to such interrogatories was June 5, 2013. Wego has yet to respond to those interrogatories. The central information sought by those interrogatories concerns when payments, if any, were made to Ruchi and/or what debts remain outstanding.

15. In light of the foregoing developments with respect to Wego, on or about June 14, 2013, Plaintiff gave notice to the Defendants, pursuant to Supplemental Rule B(2) and Local Admiralty Rule B.2, that Plaintiff takes the position that property (in the form of debts owed by

7

Wego to Ruchi) have been attached. A copy of the aforementioned notice is annexed hereto as Exhibit 11.

16. It should also be noted that on June 7, 2013, Plaintiff filed an Amended Verified Complaint in Admiralty. (Dkt. No. 16.) As is set forth therein, the Amended Complaint alleges that defendants are all alter egos and includes 12 exhibits (Exhibits A through L) in support of such allegations.

17. On July 1, 2013, Defendant Aavanti Shipping & Chartering Ltd. ("Aavanti") filed the Declaration of Barry Okun, Wego's Chief Financial Officer, dated June 28, 2013 (the "Okun Declaration"), in further support of its motion to dismiss the Verified Complaint in Admiralty and to vacate the Attachment Order. (Dkt. No. 23.) The Okun Declaration stated that "Wego did not owe any debts to Ruchi at the time it was served with the PMAG on February 21, 2013 because with respect to Purchase Order numbers 21663 and 21664 payment was not due until Wego received confirmation or about April 1 about the vessel's ETA Houston of April 11." (Okun Decl. ¶ 14.)

18. Through the Okun Declaration, I learned that on or about January 25, 2013, Wego sent "two [purchase] orders to Ruchi for the purchase of consignments of hydroxyl stearic acid, FOB Mundra Port, India, for a total cost of $116,870.00" (the "January 25 Orders"). (Okun Decl. ¶ 6, Ex. 1.) The purchase orders for the January 25 Orders annexed to the Okun Declaration expressly provide that the "Payment Terms" be "Cash Agnst Copy." (Okun Decl. Ex. 1.) These purchase orders also provide that "[t]itle to the goods shall remain with the Seller until: tender at Port of Origin." (Okun Decl. Ex. 1.)

19. On or about February 19, 2013, Wego received copies of the shipping documents, along with copies of the bills of lading for the January 25 Orders. (Okun Decl. ¶ 7.)

8

20. On or about April 1, 2013, Wego wired payment of $116,870.00 to Ruchi's bank account. (Okun Decl. ¶ 9.) As of that date, including the initial service of process and not including April 1st, the Attachment Order and PMAG had been served on Wego a total of 33 times, of which six were made in person and 27 by fax. (Ex. 2.)

21. According to Wego's 4/30/13 Response to the First Supplemental Interrogatories, Wego also ordered a consignment of goods from Ruchi which was apparently shipping on January 29, 2013 for a total cost of $29,217.50 (the "January 29 Shipment"). (Ex. A to Ex. 6 hereof.) This January 29 Shipment was noted in Plaintiff's papers opposing Aavanti's motion to dismiss and vacate filed June 17, 2013. (Declaration of Alan Van Praag, dated June 17, 2013 ("Van Praag 6-17-13 Declaration") [Dct. No. 20 ¶ 8.c]) Although the Okun Declaration states that Okun reviewed the Van Praag 6-17-13 Declaration (Okun Decl ¶ 3), addresses the June 25, 2013 purchase orders (Okun Decl. ¶¶ 6-12) and the April 9 and 16, 2013 purchase orders (Okun Decl. ¶ 13), and makes the conclusion that "Wego did not owe any debts to Ruchi at the time that it was served with the PMAG on February 21, 2013" (Okun Decl. ¶ 14), the Okun Declaration does not address the January 29 Shipment in any manner.

22. The Okun Declaration states that two outstanding purchase orders with purchase order numbers 22481 and 22547, dated April 9 and 16, 2013, respectively (collectively, the "April Orders"), which were first made known to Plaintiff in Wego's 4/30/13 Response, were subsequently canceled. (Okun Decl. ¶ 13.) Wego does not provide any further details regarding the April Orders, including when the orders were canceled, whether the goods had already been placed in the possession of the carrier when they were canceled and the extent to which the alleged cancellation had any bearing on Wego's obligations as a garnishee.

9

23. On July 8, 2013, Plaintiff filed a letter with the Court requesting a pre-motion conference in anticipation of this motion. (Dkt. No. 25.)

24. As noted above, the Court then entered the July 8, 2013 Order by docket entry of the same date which authorized Plaintiff to make this motion by order to show cause.

25. In light of the foregoing, Plaintiff hereby requests on this motion as compulsory process under Rule B(3) and as part of the remedy for Wego's contempt and to avoid any further contempt that the Court: 1) Order Wego to re-serve its answers to the Initial Interrogatories and the First Supplemental Interrogatories but this time with the answers sworn under oath; 2) Order Wego to answer under oath the Second Supplemental Interrogatories and 3)Authorize Plaintiff to serve upon Wego and instruct Wego to answer such other discovery demands and/or notices including interrogatories, document requests and depositions notices as Plaintiff determines to be needed so that Plaintiff can determine whether other acts in contempt of this Court were committed and whether Plaintiff incurred further damages.

WHEREFORE, Plaintiff respectfully requests that the Court issue an order:

(a) Holding Wego liable for civil contempt for violating the Court's Attachment Order;

(b) Directing Wego to pay into the registry of the Court the amount of $116,870.00 which is the amount that has been shown to date to have been paid to Defendant Ruchi after having been attached;

(c) Compelling Wego to re-serve its answers to the Initial and First Supplemental Interrogatories under oath;

(d) Making an evidentiary finding by adverse inference deeming payment to have been made by Wego to Ruchi for the shipment on January 29, 2013 totaling $29,217.50 and

10

requiring payment of that amount into the registry of the Court; or, alternatively, authorizing further discovery regarding the January 29, 2013 shipment and directing Wego to respond to such further discovery requests as Plaintiff may serve including, but not limited to, answering under oath the Second Supplemental Interrogatories;

(e) Ordering Wego to respond to such discovery requests as Plaintiff may serve including producing documents, providing information under oath and giving testimony regarding the April Orders which total $56,807.50;

(f) Awarding to Plaintiff the costs of this motion and such other costs as were incurred by Plaintiff due to Wego's contempt; and

(g) Awarding such other and further relief as the Court may deem appropriate and such other sanctions as the Court may deem appropriate including finding Wego to be in criminal contempt of the Court and ordering such further sanctions in relation thereto as may be appropriate in the Court's judgment.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
August 20, 2013

s/ Alan Van Praag
Alan Van Praag