Alan Van Praag, Esq.
EATON & VAN WINKLE LLP
3 Park Avenue
New York, New York 10016
212.779.9910
avanpraag@evw.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
BRITISH MARINE PLC,

                                        Plaintiff,              Case No.: 13-cv-00839 (BMC)
                                                               ECF Case

                -against-                                       **Oral Argument Requested**

AAVANTI SHIPPING & CHARTERING LTD.,
(a/k/a AAVANTI CHARTERING LIMITED),
ANIK INDUSTRIES, LTD. (f/k/a MADHYA
PRADESH GLYCHEM INDUSTRIES LTD.),
and RUCHI SOYA INDUSTRIES LTD.

                                        Defendants.
----------------------------------------------------------------------x


## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO HOLD NON-PARTY GARNISHEE WEGO CHEMICAL & MINERAL CORP. IN CONTEMPT AND FOR RELATED RELIEF

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

FACTS ........................................................................................................................... 2

SUMMARY OF ARGUMENT ........................................................................................... 7

ARGUMENT .................................................................................................................. 9

  I. WEGO IS IN CONTEMPT OF COURT BY VIOLATING THE FEBRUARY 20, 2013
     ATTACHMENT ORDER BY PAYING ATTACHED DEBTS TO A DEFENDANT ............ 9

    A. The Attachment Order is Clear and Unambiguous .............................................. 10

    B. Wego Owed a Debt of $116,870 to Defendant Ruchi for Product Purchases Under Two
       Purchase Orders Both Dated January 25, 2013 Which Debts Were Attached .................... 11

    1. Under the Terms of the Transaction, Wego Owed the Debts to Ruchi as of February 19,
       2013 .................................................................................................................... 11

    2. Even if the Debts Were Unmatured as of February 19, 2013, They Were Still Attached
       Because They Arose from Executed Contracts ............................................................ 12

    3. If, *Arguendo*, the Debts were Not Owed as of February 19, 2013, but at Some Later Date (to
       be Proved by Defendants), Subsequent Repeated Supplemental Service Attached the Debts
       Whenever They Became Due ................................................................................... 14

    C. Wego Has Not Reasonably and Diligently Attempted to Comply with the PMAG ............. 14

    D. Wego Must Be Sanctioned For Its Contempt By, In Part, Depositing Into Court  $116,870
       and Paying to Plaintiff Its Attorney's Fees and Costs .................................................. 16

  II. WEGO'S FALSE STATEMENTS IN ANSWER TO INTERROGATORIES AND TO
     THE COURT AND ITS FAILURE TO ANSWER INTERROGATORIES UNDER
     OATH ARE SEPARATE ACTS OF VIOLATONS OF RULE B ......................................... 18

  III. WEGO'S FAILURE TO INCLUDE THE JANUARY 29 SHIPMENT IN ITS
      VOLUNTARY SUBMISSION TO THE COURT SHOULD RESULT IN AN
      ADVERSE INFERENCE AGAINST IT AND AN ORDER TO PAY THE AMOUNT
      OF THE ORDER INTO COURT .............................................................................. 19

  IV. BASED ON WEGO'S CONTEMPT, VIOLATION OF RULE B AND FAILURE TO
      ANSWER INTERROGATORIES, DISCOVERY MUST BE COMPELLED AGAINST
      WEGO TO DETERMINE WHETHER OTHER PROPERTY WAS ATTACHED ............... 21

    A. Discovery Should be Compelled as to the January 29 Shipment……………………....21
    B. Discovery Should be Compelled as to the April Orders…………….…………………21

  V. THE COURT MAY FIND WEGO TO BE IN CRIMINAL CONTEMPT AND IMPOSE
     SANCTIONS ACCORDINGLY .............................................................................. 23

CONCLUSION .............................................................................................................. 23

i

# TABLE OF AUTHORITIES

**Cases**

*A.V. By Versace, Inc. v. Gianni Versace, S.p.A., et al.*, No. 96 Civ. 9721, 2002 WL
2012618, * 10 (S.D.N.Y. Sept. 3, 2002) ...................................................................16, 17, 18

*Independent Living Aids, Inc. v. Maxi-Aids, Inc.* 349 F. Supp.2d 509, 515 (E.D.N.Y.
2004) .......................................................................................................................................9

*Iran Exp. Lines v. Sumatrop*, 563 F.2d 648, 650 (4th Cir. 1977) .....................................13

*Maryland Tuna Corp. v. MS Benares*, 429 F.2d 307, 322 (2d Cir. 1970) ......................21

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs.*, 369 F.3d
645, 655 (2d Cir. 2004) .................................................................................10, 17, 23

*Powell v. Ward*, 643 F.2d 924, 931 (2d Cir. 1981) ...........................................................9

*Reibor Intern. Ltd. v. Cargo Carriers (KACZ-CO.) Ltd.*, 759 F.2d 262, 265 (2d Cir. 1985) ........13

*Southern New England Telephone Co. v. Global NAPs Inc.*, 624 F.3d 123, 146 (2d Cir.
2010) .....................................................................................................................................17

*Time Warner Cable of New York City v. U.S. Cable T.V., Inc.*, 920 F.Supp. 321, 328
(E.D.N.Y. 1996) ...................................................................................................................18

*U.S. v. Conces*, 507 F.3d 1028, 1041 (6th Cir. 2007) .....................................................9

*Weitzman v. Stein*, 98 F. 3d 717, 719 (2d Cir. 1996) ....................................................17

**Rules**

18 U.S.C. §401(3) ...........................................................................................................1, 9

Fed. R. Civ. P. Rule 37(b)(2)(A) .....................................................................................20

Local Admiralty Rule B.2 ..................................................................................................6

Local Civil Rule 83.6 .....................................................................................................1, 18

Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of
Civil Procedure Rule B ........................................................1, 3, 6, 8, 18, 19, 20, 21

**Treatises**

Robert L. Haig, *Business and Commercial Litigation in Federal Courts* § 54:48 (3d ed.
2013) .............................................................................................................................17, 23

This memorandum of law is submitted in support of the within motion of Plaintiff British Marine PLC ("Plaintiff" or "British Marine")  made pursuant to the Court's Order entered July 8, 2013, by docket entry of that date with reference to Docket No. 25, authorizing Plaintiff to "submit an Order to Show Cause for Contempt and Other Relief" in support of the within motion by order to show cause for an order pursuant to 18 U.S.C. §401(3), the inherent authority of this Court, Local Civil Rule 83.6, Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("the Supplemental Rules"), and such other laws and rules as may apply, to hold Garnishee Wego Chemical & Mineral Corp. ("Wego" or the "Garnishee") in contempt of court and for related relief, more specifically:

(a)     Holding Wego liable for civil contempt for violating the Court's Order for Issuance of Process of Maritime Attachment and Garnishment dated February 20, 2013 (Dkt. No. 7) (the "Attachment Order")

(1)     by paying to Defendant Ruchi Soya Industries Ltd. ("Ruchi") out of the jurisdiction debts attached by the Attachment Order;

(2)     by answering falsely the initial interrogatories served with the Attachment Order and the Process of Maritime Attachment and Garnishment ("PMAG") under Rule B(3)(a); and

(3)     by intentionally failing to comply with the terms of the Attachment Order by not answering the interrogatories under oath as required by Rule B(3)(a);

(b)     Directing Wego to pay into the registry of the Court the amount of $116,870.00 which is the amount that has been shown to date to have been paid to Defendant Ruchi after having been attached;

(c)     Compelling Wego to re-serve its answers to the Initial and First Supplemental Interrogatories described herein, but under oath;

(d)     Making an evidentiary finding by adverse inference deeming payment to have been made by Wego to Ruchi for the shipment on January 29, 2013 totaling $29,217.50 and requiring payment of that amount into the registry of the Court; or, alternatively, authorizing further discovery regarding the January 29, 2013 shipment and directing Wego to respond to such further discovery requests as Plaintiff may serve including, but not limited to, answering under oath the previously served Second Supplemental Interrogatories described below;

(e)     Ordering Wego to respond to such discovery requests as Plaintiff may serve regarding the purchase orders dated April 9 and 16, 2013 which total $56,807.50, including answering under oath the Second Supplemental Interrogatories;

(f)     Awarding to Plaintiff the costs of this motion and such other costs as were incurred by Plaintiff due to Wego's contempt; and

(g)     Awarding such other and further relief as the Court may deem appropriate and such other sanctions as the Court may deem appropriate including finding Wego to be in criminal contempt of the Court and ordering such further sanctions in relation thereto as may be appropriate in the Court's judgment.

## FACTS

The pertinent facts are fully set forth in the accompanying declarations of Alan Van Praag dated August 20, 2013 ("Van Praag 8-20-13 Dec.") and Edward Floyd dated August 20, 2013 ("Floyd 8-20-13 Dec.") and they are summarized here.[1]

---

[1] References to Exhibits ("Ex.") are to the exhibits to the Van Praag 8-20-13 Dec. unless otherwise identified.

On February 21, 2013, Plaintiff made initial service on Garnishee Wego of the Attachment Order and the PMAG. (Ex. 1.) Thereafter, Plaintiff made supplemental service of the Attachment Order and the PMAG on Wego by facsimile and/or personal delivery on every business day from February 21, 2013 through the present, the last such date prior to the filing of this motion being August 16, 2013. (Ex. 2.) With the initial service of the Attachment Order and the PMAG, pursuant to Rule B(3)(a), Plaintiff served Wego with interrogatories (the "Initial Interrogatories"). (Ex. 3.)

Wego's management was hostile to Plaintiff's attorneys from the beginning of the garnishment process and disinclined to cooperate with it. (See accompanying Floyd 8-20-13 Dec. and the Affidavit of Service and Description of Conversation sworn February 26, 2013 of Steven Lapriore annexed thereto as Exhibit 1.)

On or about March 12, 2013, Wego responded to the interrogatories (Ex.4.) However, Wego's responses were not made under oath. In its answers, Wego stated:

> NO [sic], Wego does not have property either tangible or intangible, financial instruments, collateral or any other property belonging to defendants in our possession, custody or control as described in Interrogatory No. 1.

(Ex. 4 ¶ 1.) It also stated:

> Wego purchases chemical product from Ruchi Soya from time to time. Terms of purchase are cash against documents.

(Ex. 4, ¶ 2.)

Based on Wego's answers and further investigation, Plaintiff served Wego with Supplemental Interrogatories dated April 10, 2013 (the "First Supplemental Interrogatories"). (Ex. 5.) On or about April 30, 2013, Wego sent Plaintiff its response to the First Supplemental Interrogatories (the "4/30/13 Response"). (Ex. 6.) Again, Wego did not answer under oath.

Wego attached spreadsheets to its 4/30/13 Response denominated as Exhibits A, B and C. Each covered a specific period or category of order: A: January 1, 2012 – February 13, 2013; B: February 13, 2013 – April 29, 2013; and C: Described in Answer No. 5 as "outstanding purchase orders for goods that have not shipped from defendant."). The spreadsheets show that several transactions occurred, in whole or in part, after service of the Attachment Order and the PMAG on Wego, including the following:

(a)     Exhibit B identified transactions associated with purchase orders numbered 21663 and 21664 for which the total cost was $116,870.00. The lines for those transactions include entries providing "Invoice No[s]" and "Date[s]." Under those headings for each of the two purchase orders is handwritten "Rec'd 4/5/13," indicating that the cargoes were received on April 5, 2013;

(b)     Exhibit C identified transactions with identifying numbers in a column headed "Trans No" which appear to be in the same sequence as the purchase order numbers in Exhibit B and which are numbered 22481 and 22547. These are described as "open orders" for which the total estimated cost is $56,807.50 and for each of which the "Req Ship Date" was April 30, 2013; and

(c)     Exhibit A identified a transaction associated with purchase order 21626 for which the total cost was $29,217.50. The date shown under the "Date" column for that transaction is January 29, 2013.

Clearly, Wego incurred debts (or maintained outstanding debts) owed to Defendant Ruchi after service of the Attachment Order and the PMAG because cargoes were received, and orders for cargoes were placed, by Wego after service of the Attachment Order and the PMAG.

Accordingly, Plaintiff notified Wego by letter dated April 30, 2013, of its obligation pursuant to the Attachment Order and the PMAG to restrain all such property. (Ex. 7.)

On or about May 1, 2013, counsel for Wego, Stuart M. Steinberg, and for Plaintiff, Mr. Van Praag, had a telephone conversation. As Mr. Van Praag describes, Mr. Steinberg claimed that Wego prepaid for all goods that it ordered. (Van Praag 8-20-13 Dec. ¶ 11.) However, this assertion is belied by Wego's response to the Initial Interrogatories in which it stated that the "[t]erms of purchase are cash against documents." (Ex. 4, ¶ 2.) Moreover, as set forth below, according to written testimony and documents provided by Wego to Defendant Aavanti Shipping & Chartering Ltd. ("Aavanti") and filed by Aavanti, that exact term was used in the purchase orders as to which the payments in contempt of the Attachment Order were made. As a matter of industry practice, such terms call for payment after presentation of shipping documents, including a bill of lading (Van Praag 8-20-13 Dec. ¶ 11). Mr. Steinberg, on behalf of Wego, sent a follow-up letter to Mr. Van Praag dated May 2, 2013 (Ex. 8), which replied to the April 30, 2013 letter and stated:

> . . . [I]t is Wego's position that it holds no such property [*i.e.,* property owned by or owed to Defendants] *nor has it held such property from the date the Order (as described in your letter) was served.*

(Ex. 8; emphasis added.) This is obviously untrue and was not true when it was written.

On May 15, 2013, Plaintiff served Wego with Second Supplemental Interrogatories (Ex. 9). Both Wego and its attorney's office received them on May 16, 2013. (Ex. 10.) The deadline for Wego to answer them was June 5, 2013. Wego has yet to respond to those interrogatories. The central information sought by those interrogatories concerns when payments, if any, were made to Ruchi and/or what debts remain outstanding.

In light of Wego's failure to comply with the Court's Order and Rule B, on or about June 14, 2013, Plaintiff gave notice to the Defendants, pursuant to Supplemental Rule B(2) and Local Admiralty Rule B.2, that Plaintiff took the position that property (in the form of debts owed by Wego to Ruchi) were attached. (Ex. 11.)

On July 1, 2013, Defendant Aavanti filed the Declaration of Barry Okun, Wego's Chief Financial Officer, dated June 28, 2013 ("Okun Dec."), in support of its motion to dismiss the Verified Complaint and to vacate the Attachment Order. (Dkt. No. 23.) Mr. Okun stated that:

> Wego did not owe any debts to Ruchi at the time it was served with the PMAG on February 21, 2013 because with respect to Purchase Order numbers 21663 and 21664 payment was not due until Wego received confirmation or about April 1 about the vessel's ETA Houston of April 11.

(Okun Dec. ¶ 14.) The very facts set forth in the Okun Declaration give the lie to that claim, however. They revealed that on or about January 25, 2013, Wego sent "two [purchase] orders to Ruchi for the purchase of consignments of hydroxyl stearic acid, FOB Mundra Port, India, for a total cost of $116,870.00" (the "January 25 Orders"). (Okun Dec. ¶ 6, Ex. 1.) The purchase orders for the January 25 Orders annexed to the Okun Declaration expressly provide that the "Payment Terms" be "Cash Agnst Copy." (Okun Dec. Ex. 1.) These purchase orders also provide that "[t]itle to the goods shall remain with the Seller until: tender at Port of Origin." (Okun Dec. Ex. 1.) On or about February 19, 2013, Wego received copies of the shipping documents, along with copies of the bills of lading for the January 25 Orders. (Okun Dec. ¶ 7.)

On or about April 1, 2013, Wego wired payment of $116,870.00 to Ruchi's bank account. (Okun Dec. ¶ 9.) As of that date, including the initial service of process and not including April 1st, the Attachment Order and PMAG had been served on Wego a total of 33 times, of which six were made in person and 27 by fax. (Ex. 2.)

According to Wego's 4/30/13 Response to the First Supplemental Interrogatories, it also ordered a consignment of goods from Ruchi which was apparently shipping on January 29, 2013 for a total cost of $29,217.50 (the "January 29 Shipment"). (Ex. A to Ex. 6.) This January 29 Shipment was noted in Plaintiff's papers opposing Aavanti's motion to dismiss and vacate filed June 17, 2013. (Declaration of Alan Van Praag, dated June 17, 2013 ("Van Praag 6-17-13 Dec.") [Dct. No. 20 ¶ 8.c]) Although the Okun Declaration states that (a) Okun reviewed the Van Praag 6-17-13 Declaration (Okun Dec ¶ 3), (b) addresses the June 25, 2013 purchase orders (Okun Dec. ¶¶ 6-12) and the April 9 and 16, 2013 purchase orders (Okun Dec. ¶ 13), and (c) states the conclusion that "Wego did not owe any debts to Ruchi at the time that it was served with the PMAG on February 21, 2013" (Okun Decl. ¶ 14), the Okun Declaration does not address the January 29 Shipment in any manner.

The Okun Declaration states that two outstanding purchase orders with purchase order numbers 22481 and 22547, dated April 9 and 16, 2013, respectively (collectively, the "April Orders"), which were first made known to Plaintiff in Wego's 4/30/13 Response, were subsequently canceled. (Okun Dec. ¶ 13.) Wego does not provide any further details regarding the April Orders, including when the orders were canceled, whether the goods had already been placed in the possession of the carrier when they were canceled and the extent to which the alleged cancellation had any bearing on Wego's obligations as a garnishee.

## SUMMARY OF ARGUMENT

The documents and information provided by Wego and the statements made by Wego, itself, establish that it intentionally disregarded the order of the Court which had been served on it by then 33 times in making a payment to Defendant Ruchi for debts that had arisen prior to initial service of the Attachment Order and PMAG (or, alternatively, prior to one of the ensuing

daily services of the Order and PMAG) in the amount of $116,870. Moreover, Wego's Chief Financial Officer denied under penalty of perjury that it had such property, its lawyer wrote in response to a Rule B(2) notice that it had no such property, and it claimed in interrogatory answers made in response to interrogatories authorized by the Attachment Order and the PMAG that it had no such property, which answers would have been material false statements made under oath had Wego complied with the Court's Order and Rule B and made its answers under oath. It should not be permitted to escape the consequences of making such false statements by violating court orders and rules in not swearing them.

Wego also supplied the declaration of its Chief Financial Officer to be filed by Defendant Aavanti in a motion seeking dismissal and vacatur based on the argument that no property had been attached, in which declaration it misleadingly omitted any reference to the January 29 Shipment as to which it had already provided information and as to which it knew it was being further questioned by Plaintiff.

Finally, it has not provided further requested information about the April Orders which it claimed to have canceled, which may well have become debts owed to Ruchi before such cancellation.

Wego therefore clearly intentionally disregarded the Court's Order and the Rules of the Court, depriving Plaintiff of security to which Plaintiff was and is entitled, in committing its contempt. Therefore, it should be compelled to provide that security, compensate Plaintiff for the costs of having to make this motion and other costs occasioned by its contempt, answer under oath the interrogatories that it previously answered, answer the interrogatories that it has not answered since receiving them three months ago, and provide documents, information and testimony in response to such other discovery requests, notices and subpoenas as Plaintiff may

serve to determine whether Wego made further transfers in contempt of Court. The Court may also see fit to treat Wego's persistent acts of contempt as criminal contempt and to further sanction Wego accordingly.

## **ARGUMENT**

### I.  **WEGO IS IN CONTEMPT OF COURT BY VIOLATING THE FEBRUARY 20, 2013 ATTACHMENT ORDER BY PAYING ATTACHED DEBTS TO A DEFENDANT**

Property belonging to Defendant Ruchi in the form of debts owed to it was in the hands of Wego at the time Wego was served with the February 20, 2013 Attachment Order and PMAG.[2]  The Attachment Order barred Wego from releasing property belonging to Ruchi (or any of the defendants in this action). Yet, Wego admits that it wired payment of $116,870 to Ruchi after Wego was served with the initial Attachment Order and the PMAG. Wego's conduct is in direct violation of the Attachment Order and it should be held liable for civil contempt.

Courts have "the inherent power to hold a party in civil contempt in order 'to enforce compliance with an order of the court or to compensate for losses or damages.'" *Powell v. Ward*, 643 F.2d 924, 931 (2d Cir. 1981) (quoting *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949)). *See also,* 18 U.S.C. § 401(3) (authorizing the federal courts to 'punish by fine or imprisonment or both,' a party's disobedience or resistance to [a] lawful . . . order." *U.S. v. Conces*, 507 F.3d 1028, 1041 (6th Cir. 2007); *Independent Living Aids, Inc. v. Maxi-Aids, Inc.* 349 F. Supp.2d 509, 515 (E.D.N.Y. 2004) ("Under 18 U.S.C. § 401(3), the Court is empowered to enforce compliance with its orders through civil contempt."). A finding of civil contempt is appropriate when "'(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently

---

[2] The Attachment Order incorporates the terms of the PMAG since it ordered the PMAG to be issued.

attempted to comply in a reasonable manner.'" *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs.*, 369 F.3d 645, 655 (2d Cir. 2004) (quoting *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995)). Courts have noted that "it need not be established that the violation was willful." *Paramedics Electromedicina*, 369 F.3d at 655 (citing *Donovan v. Sovereign Sec. Ltd.*, 726 F.2d 55, 59 (2d Cir. 1984)). As set forth below, the actions of Wego more than meet the test for a finding of civil contempt.

### A.  <u>The Attachment Order is Clear and Unambiguous</u>

The Attachment Order upon which it was issued (a copy of which was also served upon Wego on February 21, 2013) (Docket No. 7.) expressly states:

> the Clerk shall issue Process of Maritime Attachment and Garnishment as prayed for in the Verified Complaint in Admiralty, against all tangible and intangible property belonging to or being held for the Defendants, or in which the Defendants have any property interest whatsoever, including but not limited to vessels and their appurtenances, shares of stock or other financial instruments, bank accounts, proceeds from all types of financial instruments (including but not limited to swaps and other derivatives), any type of collateral, credits, bills of lading, effects, **<u>debts</u>** and monies, insurance proceeds, freights, sub-freights, charter hire, sub-charter hire, demurrage and dispatch monies, documents of title, materials, cargo or fuel of any type, judgments or awards or claims, and any other funds or property of any kind, in an amount of up to **$21,267,857.31**, as may be held, received or otherwise within the possession, custody or control of any garnishees within this District, including but not limited to WEGO Chemical & Mineral Corp. [emphasis added.]

Moreover, the PMAG, issued by the Clerk pursuant to the Attachment Order, is also clear and unambiguous. (Docket No. 7.) It provides, in relevant part, as follows:

> WHEREAS, this process is issued pursuant to such prayer and requires that a garnishee shall serve his answer, together with answers to any interrogatories served with the complaint, within 21 days after service of process upon the garnishee

> …we do hereby command you that if the Defendant cannot be found within the District you attach goods and chattels to the amount sued for, and if such property cannot be found that you attach credits and effects to the amount sued for, in the hands of the following:

WEGO CHEMICAL & MINERAL CORP. – 239 Great Neck Road, Great Neck, NY 11021

to wit: all tangible and intangible property belonging to or being held for the Defendants, or in which the Defendants have any property interest whatsoever, including but not limited to vessels and their appurtenances, shares of stock or other financial instruments, bank accounts, proceeds from all types of financial instruments (including but not limited to swaps and other derivatives), any type of collateral, credits, bills of lading, effects, **debts** and monies, insurance proceeds, freights, sub-freights, charter hire, sub-charter hire, demurrage and dispatch monies, documents of title, materials, cargo or fuel of any type, judgments or awards or claims, and any other funds or property of any kind, and that you promptly after execution of this process, file the same in this Court with your proof of service. [emphasis added.]

Both the Attachment Order and the PMAG are clear. They even provide specific examples of property subject to attachment, including, in pertinent part, debts. No other interpretation of either the Attachment Order or the PMAG can be made. By law, Wego was required to restrain Ruchi's property that was in its possession once it was served with the Attachment Order and the PMAG.

### B. Wego Owed a Debt of $116,870 to Defendant Ruchi for Product Purchases Under Two Purchase Orders Both Dated January 25, 2013 Which Debts Were Attached

#### 1. Under the Terms of the Transaction, Wego Owed the Debts to Ruchi as of February 19, 2013

Wego clearly failed to comply with the Attachment Order and the PMAG. Wego was personally served with the Attachment Order and the PMAG on February 21, 2013. (Ex. 1.) Prior to April 1, 2013, it was served another 32 times; five more in person and 27 more by fax. (Ex. 2.) There is no way that it was unaware of the Order that it ignored. Wego admits in the Okun Declaration (Dkt. No. 23) and the corresponding purchase orders attached thereto expressly provide, that the two purchase orders to Ruchi totaling $116,870 (the January 25 Orders) were made "FOB Mundra Port, India" (Okun Dec. ¶ 6, Ex. 1 thereto) and the "payment terms" were

11

"Cash Agnst Copy." (Okun Dec. Ex. 1.) Moreover, the terms of the purchase orders also provided that title to the goods would pass upon "tender at the port of origin". (Okun Dec. Ex. 1.) Therefore, Ruchi's basic obligation was to load the goods onto the carrier at the load port at which point title would pass to Wego. Wego's basic obligation was to make payment to Ruchi once it received <u>copies</u> of the shipping documents. Therefore, Ruchi had performed its obligations before the copies of the shipping documents were delivered on February 19, 2013, triggering Wego's obligation to pay.

On or about February 19, 2013, Wego received such "copies of the shipping documents, along with copies of the bills of lading showing that the goods were shipped on the vessel in four (4) containers at Mundra port on February 15, 2013 for delivery at the port of Houston, Texas." (Okun Dec. ¶ 7.) Pursuant to the terms of the purchase orders for the January 25 Orders, once the goods were placed in the possession of the carrier, Ruchi's only remaining basic obligation was to deliver the copies of the shipping documents to Wego which triggered Wego's debt to Ruchi. Thus, it was from that point on February 19, 2013, that Ruchi's basic obligations were complete and, in turn, Wego owed a debt of $116,870 to Ruchi.

Two days later, on February 21, 2013 – when Plaintiff made initial service of the Attachment Order and PMAG on Wego – the debt, which arose on February 19, 2013, became attached. Accordingly, when, on April 1, 2013, Wego wired payment of $116,870 to Ruchi's bank account (Okun Dec. ¶ 9) it did so in direct, intentional and knowing violation of the Attachment Order and the PMAG.

> **2. Even if the Debts Were Unmatured as of February 19, 2013, They Were Still Attached Because They Arose from Executed Contracts**

As has been explained, daily service of the Attachment Order and the PMAG has been made on Wego since they were served initially so that, as explained in the next section, if the

12

debts owed to Ruchi under the January 25 Orders had arisen after February 19, 2013, they still would have been attached before Wego paid Ruchi. And there is yet an additional reason why there is no way that those debts were not attached before the April 1, 2013 payment.

As noted above, the terms of the January 25 Orders provided that title to the goods would pass to Wego upon "tender at the port of origin." Therefore, Ruchi had performed its obligations before the copies of the shipping documents were delivered on February 19th and thus triggered Wego's obligation to pay. Therefore, the contracts were executed as of that date. Wego, therefore, has no defense to the garnishment based on some argument that the debt was not yet mature. The well-established rule is that the "maturity of [a] debt is not a prerequisite for garnishment." *Iran Exp. Lines v. Sumatrop*, 563 F.2d 648, 650 (4th Cir. 1977). "An unmatured debt may be garnisheed provided it arises from an executed contract." *Id. See also Reibor Intern. Ltd. v. Cargo Carriers (KACZ-CO.) Ltd.*, 759 F.2d 262, 265 (2d Cir. 1985) (describing *Iran Exp. Lines* as standing for the proposition "that maturity of the debt is not a prerequisite for garnishment, provided that the unmatured debt arises from an executed contract.") The $116,870 debt Wego owed to Ruchi, even if unmatured, arose from an executed contract and was therefore subject to attachment.

Wego made the self-serving assertion that:

> Wego did not owe any debts to Ruchi [as of February 21, 2013] because with respect to Purchase Order Numbers 21663 and 21664 payment was not due until Wego received confirmation on or about April 1 about the vessel's ETA Houston of April 11.

(Okun Dec. ¶ 14.) The assertion, as explained in Plaintiff's pre-motion letter (Dkt. No. 25) and the preceding section, is factual and legal nonsense because the sales were made on an FOB point-of-origin basis and their payment terms were cash against copy so that Wego's debt to Ruchi became due on February 19, 2013 when the copies of the shipping documents were

delivered to Wego. It is also legal nonsense because, as just explained, the contract clearly was executed so that even if the debt was unmatured, (it wasn't), that would not have prevented the garnishment and attachment of the debts from the January 25 Orders.

> **3. If, *Arguendo*, the Debts were Not Owed as of February 19, 2013, but at Some Later Date (to be Proved by Defendants), Subsequent Repeated Supplemental Service Attached the Debts Whenever They Became Due**

There is nothing in the purchase orders or any information provided by Wego that supports any date other or later than February 19, 2013 as the date on which Wego's debts to Ruchi for the January 25 Orders became due. Nor has Wego adduced any other evidence or any legal authority for its assertion that the debt became due on April 1, 2013, when the vessel's ETA at Houston was confirmed to Wego. Even if, for argument's sake, the initial service of the Attachment Order and the PMAG did not attach the debts from the January 25 Orders, the debts were attached when Wego was served with repeated supplemental service every business day thereafter. By April 1, 2013 - the date Wego wired its payment to Ruchi - Wego had been served with supplemental service of the Attachment Order and the PMAG either by facsimile and/or personal service 32 times. (Van Praag 8-20-13 Dec. ¶ 20, Ex's 1, 2.) If, for some reason, the Court finds that the debt became due on April 1, 2013, Wego was still obligated to restrain the funds and is therefore in contempt of the Attachment Order.

Moreover, from February 22, 2013 to the present, Wego has been served with supplemental service of the Attachment Order and the PMAG either by facsimile and/or personal service. Therefore, whatever date Wego may argue the debts became due, they were attached.

### C. <u>Wego Has Not Reasonably and Diligently Attempted to Comply with the PMAG</u>

Without question, Wego has not reasonably or diligently attempted to comply with the Attachment Order. Despite the fact that it was served with the Attachment Order as well as the

PMAG on February 21st, Wego made a payment totaling $116,870 to Ruchi on or about April 1st - in complete disregard of the Attachment Order. Wego failed to notify Plaintiff that it had Ruchi's property in its possession at the time that it was initially served with the Attachment Order on February 21, 2013. Wego continued its contemptuous conduct by failing to notify Plaintiff of its possession of debt owed to Ruchi every business day thereafter when it was served with supplemental service by facsimile and/or by personal service.

It is impossible that such failures were due to ignorance, as fantastic as such a claim might be. To the contrary, Wego has claimed repeatedly that it had no property described by the Attachment Order and PMAG in interrogatory answers, representations of its attorney and declaration by its Chief financial Officer. Its denials make crystal clear that Wego has never had any intention of complying with the Court's Order.

Wego claimed that it did not have any property of defendants in its March 12, 2013 response to the Initial Interrogatories served pursuant to the Attachment Order. (Ex. 4, ¶ 1.)

The facts of the January 25 Orders set forth above, alone show that Wego's response was false when made as it was clearly in possession of Ruchi's debt at the time it was served with the PMAG and when it answered the Initial Interrogatories. Then, when, on receiving the 4/30/13 Response to the First Supplemental Interrogatories, Plaintiff alerted Wego that very same day to the fact that Wego was in possession of property subject to attachment (Ex. 7.) Wego's response, in its call with Plaintiff's counsel, was to decline to provide any supporting documentation regarding Wego's payment procedures with respect to its transactions with Defendant Ruchi which would assist Plaintiff with determining whether further property should be or should have been garnisheed. (Van Praag 8-20-13 Dec. ¶¶ 11, 12.) In its letter to Plaintiff's counsel dated May 2, 2013, Wego's counsel again stated, falsely, that "[Wego] holds no such property nor has

it held such property from the date the Order…was served."  (Van Praag 8-20-13 Dec. ¶13, Ex. 8.) Further, on June 28, 2013, Wego's Chief Financial Officer, Barry Okun, made his declaration of that date which he gave to Defendant Aavanti, in support of its motion filed on July 1, 2013 to dismiss the Verified Complaint and to vacate the Attachment Order. (Dkt. No. 23.) Mr. Okun stated that Wego did not owe any debts to Ruchi at the time it was served with the PMAG on February 21, 2013. (Okun Dec. ¶ 14.) As set forth in detail above and in the Van Praag 8-20-13 Declaration, Okun set forth the facts of the transaction that showed the statement to be untrue in the same declaration.

Despite having been personally served with the Attachment Order and the PMAG on February 21, 2013, along with continuous supplemental service via facsimile and/or personal service daily since then, and having been alerted to the fact that it held property subject to attachment, Wego continued to falsely claim that it did not possess property belonging to any of the Defendants during the relevant time period. Instead, it ignored the initial and daily subsequent service of the Attachment Order and the PMAG and defiantly paid Ruchi $116,870 on April 1, 2013. There should be no doubt that Wego is in contempt of the Attachment Order for intentionally removing Ruchi's property from the jurisdiction of this Court.

### D.  Wego Must Be Sanctioned For Its Contempt By, In Part, Depositing Into Court $116,870 and Paying to Plaintiff Its Attorney's Fees and Costs

In a civil contempt proceeding, "the Court has broad discretion to fashion an appropriate coercive remedy, taking into account the nature of the harm and the probable effect of alternative sanctions." *A.V. By Versace, Inc. v. Gianni Versace, S.p.A., et al.*, No. 96 Civ. 9721, 2002 WL 2012618, * 10 (S.D.N.Y. Sept. 3, 2002) "The sanctions imposed on a civil contemnor should be calculated to advance either, or both, of two goals: to coerce future compliance with the court's

order, or to compensate the complainant for losses stemming from the contemnor's past noncompliance." *Id. Accord, Paramedics Electromedicina,* 369 F.3d at 657 .

In this case, both goals are appropriate. Wego's contempt has deprived Plaintiff of security to which it is entitled and has cost Plaintiff the expense of this motion and other expenses related to investigating Wego's dealings with the defendants. Therefore, Plaintiff is entitled to compensation in the form of security in the total amount of the lost security that Wego failed to restrain, the costs of this motion, and related expenses. In light of the other possible contempts by way of paying defendants attached funds that should have been restrained, the Court also must take steps to ensure the current and future compliance of Wego with its orders.

Sanctions designed to compensate a victim of the contempt are appropriate so long as the sanction does not exceed the actual losses caused by the contemptuous behavior. Robert L. Haig, *Business and Commercial Litigation in Federal Courts* § 54:48 (3d ed. 2013). Reasonable costs and attorney's fees may be an appropriate part of a compensatory contempt sanction. *Southern New England Telephone Co. v. Global NAPs Inc.,* 624 F.3d 123, 146 (2d Cir. 2010) (holding that the district court did not abuse its discretion in ordering defendant to pay plaintiff's fees and costs as part of the contempt sanctions as it was "correlated with the loss" plaintiff had incurred).

While it is not necessary to find willfulness to order the award of attorneys' fees as part of the compensatory remedy for a contempt, such a finding, as is clearly warranted on the facts herein, strongly supports awarding the costs of prosecuting the contempt, including legal fees and, in light of such a finding, a court "would need to articulate persuasive grounds for any denial of compensation for the reasonable legal costs of the victim of contempt." *Weitzman v. Stein*, 98 F. 3d 717, 719 (2d Cir. 1996); *A.V. By Versace,* 2002 WL 2012618, at * 11.

In addition, "[c]ivil contempt proceedings may yield a conditional jail term or fine." *Time Warner Cable of New York City v. U.S. Cable T.V., Inc.*, 920 F.Supp. 321, 328 (E.D.N.Y. 1996). "Thus, a district court may imprison a civil contemnor to 'compel the contemnor to do what the law made it his duty to do.'" *A.V. By Versace*, 2002 WL 2012618 at *10 (quoting *Penfield Co. of Cal. v. SEC*, 330 U.S. 585 (1947)).

In this case, the appropriate sanctions against Wego for its contumacy include, but are not limited to: (1) depositing into the Court's registry $116,870, the amount Wego admittedly paid to Ruchi in direct violation of the Attachment Order and the PMAG; and (2) pursuant to Local Rule 83.6, paying Plaintiff's attorney's fees and costs, including, but not limited to, the fees and costs of this motion, the investigation made and the discovery sought on the motion and other fees and costs related to the contemptuous acts, namely the transfer(s) of funds in violation of the Attachment Order and Rule B(3)(a), the false statements and the failure to provide accurate information timely and under oath as required by the Attachment Order and Rule B(3)(a). The order also should provide that Wego pay such further amounts into the Court's registry as may be determined to be security wrongfully denied to Plaintiff upon submission of proof thereof and any necessary hearing thereon without the necessity of a new and separate motion for contempt.

## II.  WEGO'S FALSE STATEMENTS IN ANSWER TO INTERROGATORIES AND TO THE COURT AND ITS FAILURE TO ANSWER INTERROGATORIES UNDER OATH ARE SEPARATE ACTS OF VIOLATONS OF RULE B

The purpose of this section is to make clear that: 1) Wego's false statement in its response to the Initial Interrogatories and the perpetuation of that false statement in further replies by Wego's attorney to Rule B interrogatories and the statement filed in court by its Chief Financial Officer are acts of contempt separate from its failure to restrain the attached funds and/or a violation of Supplemental Rule B(3) meriting separate consideration and sanctions; and

2) Wego's failure to answer the Interrogatories under oath, as required by Rule B(3) should not protect it from the consequences of making false statements under oath because to do so would reward a deliberate violation of the Rules and the Court Order that incorporated them.

Supplemental Rule B(3) provides that "if the garnishee refuses or neglects to answer on oath as to the debts, credits, or effects of the defendant in the garnishee's hands, or any interrogatories concerning such debts, credits, and effects that may be propounded by the plaintiff, the court may award compulsory process against the garnishee."

Wego deliberately failed to comply with the terms of the Court's Attachment Order and Rule B by not answering the interrogatories under oath. Moreover, Wego made false statements in its answers and, since they were unsworn, Wego cleverly avoided punishment for lying under oath. For its devious and intentionally false responses to the interrogatories, Wego should be punished.

### III.  WEGO'S FAILURE TO INCLUDE THE JANUARY 29 SHIPMENT IN ITS VOLUNTARY SUBMISSION TO THE COURT SHOULD RESULT IN AN ADVERSE INFERENCE AGAINST IT AND AN ORDER TO PAY THE AMOUNT OF THE ORDER INTO COURT

According to Wego's 4/30/13 Response to the First Supplemental Interrogatories, it also ordered a consignment of goods from Ruchi which was apparently shipping on January 29, 2013 for a total cost of $29,217.50 (the January 29 Shipment). (Ex. A to Ex. 6.) The January 29 Shipment was noted in Plaintiff's papers opposing Aavanti's motion to dismiss and vacate filed June 17, 2013. (Van Praag 6-17-13 Dec. [Dkt. No. 20], ¶ 8(c).) Although the Okun Declaration states that (a) Okun reviewed the Van Praag 6-17-13 Declaration (Okun Dec ¶ 3), (b) addresses the June 25 Orders (Okun Dec. ¶¶ 6-12) and the April Orders (Okun Dec. ¶ 13), and (c) states the conclusion that "Wego did not owe any debts to Ruchi at the time that it was served with the

PMAG on February 21, 2013" (Okun Decl. ¶ 14), the Okun Declaration does not address the January 29 Shipment in any manner.

Wego should not be permitted to ignore answering discovery relating to attached property that it may have held and then make a voluntary filing with the Court asserting that no property was attached under the Court's Order. Based on Wego's failure to address the January 29 Shipment, an order should be made establishing the fact that Wego made a payment to Ruchi of a debt that was attached and the amount of which should have been restrained.

Apart from the Court's broad power to punish for contempt and for filing a false document, it also can and should order "compulsory process" as provided by Supplemental Rule B(3) since "the garnishee refused or neglected to answer on oath" the Initial Interrogatories by answering them falsely and not answering them under oath, not answering the supplemental interrogatories intended to determine whether debts relating to other transactions had been attached, and then making the further false statement to the Court under penalty of perjury and artfully avoiding any mention of the January 29 Shipment. Rule 37 of the Federal Rules of Civil Procedure provides a guide to the compulsory process available in such circumstances. Where there has been a failure to comply with a court's discovery order, it provides, among other sanctions, for:

> Directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

Fed. R. Civ. P. Rule 37(b)(2)(A).

In light of such a finding, the Court should further order that Wego pay into the registry of the Court the amount of the January 29 Shipment, which is $29,217.50, in addition to the amount to be paid in based on the January 25 Orders.

## IV.  BASED ON WEGO'S CONTEMPT, VIOLATION OF RULE B AND FAILURE TO ANSWER INTERROGATORIES, DISCOVERY MUST BE COMPELLED AGAINST WEGO TO DETERMINE WHETHER OTHER PROPERTY WAS ATTACHED

### A.  Discovery Should be Compelled as to the January 29 Shipment

In the event that  the Court should determine not to make an adverse inference ruling as to the January 29 Shipment, then, it should authorize Plaintiff to serve further interrogatories, document requests and deposition notices or subpoenas for testimony on Wego with respect to the January 29 Shipment so that a determination can be made as to whether Wego held attached property related to that transaction, whether a further contempt has been committed and whether further damages have been incurred.

Not only is this the proper remedy for the contempt and for the compulsory process authorized by Rule B(3) as set forth above, but it is also the proper approach when a garnishee in a Rule B(1) proceeding denies having property owed to or belonging to the defendant. *Maryland Tuna Corp. v. MS Benares*, 429 F.2d 307, 322 (2d Cir. 1970) (holding that when a garnishee denies having property owed to or belonging to the defendant, then the plaintiff "can avail itself of discovery procedures to secure firsthand and documentary proof…").

### B.  Discovery Should be Compelled as to the April Orders

Regardless of whether the Court orders discovery as to the January 29 Shipment or does not do so because it has made an order finding the facts of that transaction be established in favor of Plaintiff, the Court should authorize Plaintiff to serve and compel Wego to answer and comply with further interrogatories, document requests and deposition notices or subpoenas for testimony on Wego relating to the April Orders. As previously noted, Wego was served with the Second Supplemental Interrogatories on May 15, 2013. The deadline for Wego to respond to such interrogatories has passed and Wego has yet to respond to them. The Okun Declaration

addresses the April Orders by admitting that, on April 9 and 16, Wego placed further orders with Ruchi for a total cost of $56,807.50, but goes on to contend that these orders were later canceled, without further elaboration. (Okun Decl. ¶ 13.) Wego does not provide any details about when the orders were canceled or what the status of the goods was at the time of the purported cancellation. According to records provided by Wego in its 4-30-13 Response to Plaintiff's First Supplemental Interrogatories, the "Req Ship Date" for the April Orders was April 30. (Van Praag 8-20-13 Dec. ¶ 9(b), Ex. 6, Ex. B thereto.) Those April Orders are identified as "Open Order[s]" in the 4-30-13 Response. Significant questions and issues are raised as to the timing of the cancellations and the status of the goods upon cancellation. For instance, if the goods were already loaded onto the carrier (transferring title to Wego) when Wego purportedly cancelled the order, then a debt was owed to Ruchi and subject to attachment.

Based on the little information Wego has provided, further discovery is required to answer the clear, factual questions raised as to the April Orders and their alleged cancellation. Moreover, such discovery is necessary to vindicate the court and avoid further damage to Plaintiff. Discovery is also necessary to determine whether further contemptuous acts were committed by Wego leading to further damage to Plaintiff in its attempts to locate and restrain security for its claims against the defendants in this action. Therefore, British Marine requests that the Court authorize further discovery on Wego as described above to determine the truth of the responses it has already provided, whether further contempt has been committed and whether further damage has been incurred.

Moreover, to the extent that other purchase orders exist information regarding which Wego has not yet provided, discovery with respect to such purchase orders should also be authorized.

## V.  THE COURT MAY FIND WEGO TO BE IN CRIMINAL CONTEMPT AND IMPOSE SANCTIONS ACCORDINGLY

Criminal contempt is typically imposed "to punish the violation and vindicate the court's authority." *Paramedics Electromedicina*, 369 F.3d at 657, *citing,Universal City Studios*, 705 F.2d at 96. The relief sought in the within motion is primarily for civil contempt so that Plaintiff can be compensated for the damages caused by the contempt and protected from further acts of contempt by compelling the Garnishee to comply with the Attachment Order. Criminal contempt may be appropriate, as the critical difference between civil and criminal contempts is in the substance of the proceeding and the character of the relief. Haig, § 54:49 at 483. Therefore, if the Court determines on the current record or after further proceedings regarding Wego's noncompliance with the Court's Attachment Order or any subsequent order that sanctions are required for the purpose of vindicating the authority of the Court and punishing the actions of the contemnor, then it may wish to consider criminal contempt. *See, id.*

## CONCLUSION

In light of the foregoing, Plaintiff respectfully requests that the Court issue an Order:

(a)     Holding Wego liable for civil contempt for violating the Court's Order for Issuance of Process of Maritime Attachment and Garnishment dated February 20, 2013 (Dkt. No. 7) (the "Attachment Order")

(b)     Directing Wego to pay into the registry of the Court the amount of $116,870.00 which is the amount that has been shown to date to have been paid to Defendant Ruchi after having been attached;

(c)     Compelling Wego to re-serve its answers to the Initial and First Supplemental Interrogatories described herein, but under oath;

(d)     Making an evidentiary finding by adverse inference deeming payment to have been made by Wego to Ruchi for the shipment on January 29, 2013 totaling $29,217.50 and requiring payment of that amount into the registry of the Court; or, alternatively, authorizing further discovery regarding the January 29, 2013 shipment and directing Wego to respond to such further discovery requests as Plaintiff may serve including, but not limited to, answering under oath the previously served Second Supplemental Interrogatories;

(e)     Ordering Wego to respond to such discovery requests as Plaintiff may serve regarding the purchase orders dated April 9 and 16, 2013 which total $56,807.50, including answering under oath the Second Supplemental Interrogatories;

(f)     Awarding to Plaintiff the costs of this motion and such other costs as were incurred by Plaintiff due to Wego's contempt; and

(g)     Awarding such other and further relief as the Court may deem appropriate and such other sanctions as the Court may deem appropriate including finding Wego to be in criminal contempt of the Court and ordering such further sanctions in relation thereto as may be appropriate in the Court's judgment.

Dated: New York, New York
       August 20, 2013

                                        EATON & VAN WINKLE LLP


                                        By:     s/ Alan Van Praag
                                                Alan Van Praag

                                        3 Park Avenue
                                        New York, New York 10016
                                        212.779.9910

                                        *Attorneys for Plaintiff*
                                        *British Marine PLC*