```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------  X
                                                            :
BRITISH MARINE PLC,                                         :    **DECISION AND ORDER**
                                                            :
                              Plaintiff,                    :    13 Civ. 839 (BMC)
                                                            :
           - against -                                      :
                                                            :
AAVANTI SHIPPING & CHARTERING LTD.,                         :
ANIK INDUSTRIES, LTD. f/k/a MADHYA                          :
PRADESH GLYCHEM INDUSTIRIES, LTD.,                          :
and RUCHI SOYA INDUSTRIES LTD.,                             :
                                                            :
                              Defendants.                   :
----------------------------------------------------------  X
```

**COGAN**, District Judge.

Plaintiff seeks attorneys' fees of $58,897 against non-party Wego Chemical & Mineral Corp. I authorized the recovery of attorneys' fees after I found that Wego had disregarded the Process of Maritime Attachment and Garnishment (the "Attachment Order") that I had issued and paid defendant Ruchi Soya Industries Ltd. on an account payable instead of holding the money pursuant to the Attachment Order. I ordered Wego to pay the equivalent amount of the attached debt into the Court's registry, which it has done, and plaintiff's attorneys' fees for bringing the contempt motion. I directed that plaintiff file this motion addressing the amount of the proposed fee award. This is the decision on that motion [56].

**I. Standard for Awarding Fees**

It is well established that a court may award attorneys' fees under its "inherent power to sanction parties and their attorneys . . . where the party or the attorney has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Lohan v. Perez, 924 F. Supp. 2d 447, 457

(E.D.N.Y. 2013) (quoting Revson v. Cinque & Cinque, P.C., 221 F.3d 71, 78 (2d Cir. 2000)). As I noted on the record at the evidentiary hearing regarding plaintiff's contempt motion, Wego violated the Attachment Order in circumstances strongly suggestive of bad faith and collusion with defendants. Further, this violation has certainly proved vexatious, as it required extensive litigation to resolve Wego's spurious claim that its written contracts do not mean what they say.

In determining the amount of a fee award, courts within the Second Circuit generally employ the "presumptively reasonable fee" method. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections, 522 F.3d 182, 190 (2d Cir. 2008). Under this method, courts multiply the "amount of time reasonably spent by counsel" by a reasonable hourly rate to derive a presumptively reasonable overall fee. Cover v. Potter, No. 05 Civ. 7039, 2008 WL 4093043, at *5 (S.D.N.Y. Aug. 29, 2008). A court must then determine whether this presumptively reasonable fee is subject to an upward or downward departure. Id. at *6. "The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward." Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S. Ct. 1933, 1940 (1983); see also, e.g., Arbor Hill, 522 F.3d at 186 ("[T]he lodestar method involved two steps: (1) the lodestar calculation; and (2) adjustment of the lodestar based on case-specific considerations.").

**II. Wego's objections**

First, Wego challenges the hourly rates sought by plaintiff's attorneys. Plaintiff seeks rates for two partners of $450 per hour and $400, respectively. Wego acknowledges that "[t]he hourly rates permitted by the Eastern District of New York on fee applications generally range from $300 to $400 per hour for partners, depending upon the experience of the attorney, the nature of the action and the extent of legal services provided." Its complaint seems to be one of

2

proof, i.e., that plaintiff's attorneys have not proven the reasonable hourly rate for their services in the prevailing market. To an extent, that objection is cured in plaintiff's reply papers, which expand upon the attorneys' qualifications.

More fundamentally, a court "may also rely on its own knowledge of hourly rates in private firms to determine what is reasonable in the relevant community." Bobrow Palumbo Sales, Inc. v. Broan-Nutone, LLC, 549 F. Supp. 2d 274, 280 (E.D.N.Y. 2008). The rates sought here are either within, as to the $400 rate, or, as to the $450 rate, so close to the acknowledged market in this district that I hardly need the National Law Journal Directory of the Legal Profession or surveys containing data on rates to tell me what is reasonable.

Those rates are amply deserved here, and indeed this case might support somewhat higher rates. First, the motion was reasonably complex. It is not that often that a garnishee which should have no skin the game nevertheless violates an order of attachment, and the remedies are not immediately apparent. Wego claimed the ability to ignore the attachment order in a way that required some effort for counsel to untangle it, including an evidentiary hearing. Resolution needed to occur fairly quickly because we were dealing with a prejudgment remedy. Moreover, although some cases in this district cite a $300-$400 market rate for partner time, a lot of these cases, including those cited by Wego, do not distinguish between more complex maritime or commercial cases like this one and the more typical and less complicated cases involving fee shifting, such as cases under the Fair Labor Standards Act, the Fair Debt Collection Practices Act, or 42 U.S.C. § 1983. In short, an attorney in this district willing to take on a complex international maritime case like this one for $300 an hour should make a client suspicious, because that is just too little.

3

Next, Wego challenges the total amount of time spent. I have to agree with this challenge. As plaintiff acknowledges, a personal issue arose with the regard to one its attorneys which required it to shift work to other attorneys at the firm. There does not seem to be much dispute that this substantially increased the total amount of hours spent. Plaintiff points out that the personal issue occurred only after Wego obtained an adjournment, implying that Wego was in part responsible because it sought the delay, but I see no proximate cause between a routine adjournment and a substantial increase in an attorneys' bill. Ultimately, as clients are increasingly recognizing, the need to shift attorneys for professional or personal reasons is part of a firm's overhead. Wego should be treated no differently simply because it is an involuntary client.

Peculiarly, plaintiff has nowhere told me the total number of hours spent on the project (nor has it told me the attorneys' hourly rates, but those are readily discernable from the invoices), and I am not going take a calculator to do what plaintiff's attorneys should have done in making this fee application. But the lack of efficiency described above is apparent from the gross amount of the fee requested: $58,897.00. That is far too much for this motion. Since I have found the hourly rates reasonable, it follows that the amount of time yielding an unreasonable total must itself be unreasonable.

In addition, it appears that where there was an overlap as to the work required to prosecute the attachment order against Wego and the case generally, plaintiff seeks to recover that amount from Wego. I do not see why. Wego is a violator of court orders, but any overlapping issues are something that plaintiff would have had to pay for itself in any event. Wego should pay for the additional marginal cost of its violation; it should not pay for prosecution of the underlying case.

Finally, Wego raises two points that have merit. First, I have no categorical objection to block billing, as I think that it actually can promote efficiency rather than having attorneys spend inordinate time keeping their records. See U.S. v. Sixty-One Thousand Nine Hundred Dollars and No Cents ($61,900.00), 856 F. Supp. 2d 484, 490-92 (E.D.N.Y. 2012). In this case, however, possibly because of the overlapping issues between prosecution of the main action versus the contempt motion, block billing obfuscates the time entries, particularly with regard to the November 13, 2013 invoice. A reduction is in order for improper use of block billing.

Wego's last point is that plaintiff is seeking to recover for what it contends are "administrative" costs. This is a minor amount and will be taken into account in the global reduction that I will impose.

A reasonable cost for this motion would be in the $25,000-$35,000 range. I will reduce plaintiff's fee request by 50%, taking into account all of the factors set forth above, which will result in an award of $29,448.50. Wego is ORDERED to pay this amount as directed by plaintiff within 7 days, failing which judgment will enter.

**SO ORDERED.**

                                                                         _____
                                                                         U.S.D.J.

Dated: Brooklyn, New York
           January 22, 2014

5