```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------  X
                                                            :
BRITISH MARINE PLC,                                         :   **MEMORANDUM DECISION**
                                                            :   **AND ORDER**
                                   Plaintiff,               :
                                                            :   13 Civ. 839 (BMC)
                  - against -                               :
                                                            :
AAVANTI SHIPPING & CHARTERING LTD.,                         :
ANIK INDUSTRIES, LTD. f/k/a MADHYA                          :
PRADESH GLYCHEM INDUSTIRIES, LTD.,                          :
and RUCHI SOYA INDUSTRIES LTD.,                             :
                                                            :
                                   Defendants.              :
----------------------------------------------------------  X
```

**COGAN**, District Judge.

This matter is before the Court on several motions. Defendant Aavanti Shipping & Chartering, Ltd. ("Aavanti") moves to stay this action in light of the arbitration between British Marine and Aavanti currently pending in London. Defendants Ruchi Soya Industries, Ltd. ("Ruchi") and Anik Industries, Ltd. ("Anik") join Aavanti's motion, and separately move to dismiss the Second Amended Complaint under the doctrine of *forum non conveniens*. Finally, plaintiff British Marine PLC ("British Marine") moves to strike several affirmative defenses asserted by defendants Ruchi and Anik. For the reasons that follow, defendants' motion to dismiss on *forum non conveniens* grounds is denied; defendants' motion to stay is granted; and plaintiff's motion to strike is denied.

British Marine began this action in February 2013, alleging that Aavanti had breached a maritime Contract of Affreightment ("COA"). The Complaint further alleged that Ruchi and Anik were liable for Aavanti's breach under two different theories, either because they (1) guaranteed Aavanti's performance or (2) were *alter ego*s of Aavanti. The Complaint also alleged that "[p]ursuant to the terms of the COA, disputes are to be resolved by arbitration in

London pursuant to English law" and that British Marine "brings this action solely to obtain *quasi-in-rem* jurisdiction and security for its damages plus interest and the costs for London arbitration."

The Court granted British Marine's request for an Order of Maritime Attachment and Garnishment (the "Attachment Order") pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure (the "Supplemental Rules"). British Marine successfully attached funds owed to Ruchi by a third-party garnishee, Wego Chemical & Mineral Corp. ("Wego"). Wego initially ignored the Attachment Order and made payment on debts it owed to Ruchi at the time it was served; after a hearing, Wego was ordered to deposit approximately $150,000 into the Court's registry, representing the amounts it owed to Ruchi at the time plaintiff served Wego with the Attachment Order. The Court subsequently denied motions by defendants to vacate the attachment and dismiss the Complaint.

The parties have identified to the Court three parallel proceedings in other countries that relate to same claims at issue in this case. There are two arbitrations underway in London: one between British Marine and Aavanti, addressing British Marine's claim of breach of the COA, and a separate arbitration between British Marine, Ruchi, and Anik, addressing British Marine's claim that those defendants guaranteed Aavanti's performance of the COA. Neither arbitration encompasses British Marine's *alter ego* theory. There is also an action brought by Ruchi and Anik against British Marine in India, seeking (1) a declaration that no valid guarantee of Aavanti's performance exists under Indian law and (2) to enjoin British Marine from prosecuting any action arising from the alleged breach of the COA in any foreign court, including this one.

Familiarity with the facts, procedural history, and the Court's prior decisions in this case is otherwise assumed, and will only be recounted further as necessary to explain the Court's rulings.

## DISCUSSION

### I. Forum Non-Conveniens

The Second Circuit has established a three-step framework for analyzing a motion to dismiss based on *forum non conveniens*. A reviewing court must (1) determine the degree of deference to be afforded to the plaintiff's choice of forum; (2) examine whether an adequate alternative forum exists; and (3) balance the private and public factors enumerated by the Supreme Court in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S. Ct. 839 (1947). See, e.g., Aracruz Trading Ltd. v. Japaul Oil and Mar. Servs., PLC, No. 08 Civ. 3511(JGK), 2009 WL 667298, at *3 (S.D.N.Y. Mar. 16, 2009) (citing Iragorri v. United Tech. Corp., 274 F.3d 65, 73–74 (2d Cir. 2001) (en banc)). A motion to dismiss for *forum non conveniens* should not be granted "unless the balance is strongly in favor of the defendant." Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d 146, 154 (2d Cir. 2005).

At the outset, it is worth clarifying the claims that British Marine is asserting. British Marine's Second Amended Complaint alleges three causes of action: (1) that Aavanti breached the maritime COA; (2) that Ruchi and Anik breached their guarantees of Aavanti's performance of the COA; and (3) that Ruchi and Anik are liable for Aavanti's breach of the COA, because they are *alter egos* of Aavanti.

British Marine states that it only seeks to litigate the merits of its *alter ego* claim in this Court, and that the other claims will be resolved in arbitration. Of course, corporate veil piercing is not an independent cause of action, "but rather is a means of imposing liability on an

3

underlying cause of action." Peacock v. Thomas, 516 U.S. 349, 354, 116 S. Ct. 862 (1996). Thus, the parties agree that to succeed on its *alter ego* claims, British Marine will first have to prevail in its arbitration against Aavanti in London. The question of whether Aavanti breached the COA or whether Ruchi and Anik guaranteed Aavanti's performance will not be before this Court.[1] Should British Marine prevail in London against Aavanti, the sole inquiry before this Court would be whether British Marine can demonstrate that it is entitled to pierce the corporate veil and hold Ruchi and Anik liable for Aavanti's breach.

But Ruchi and Anik's motion appears to seek *forum non conveniens* dismissal of both the guarantee and the *alter ego* claims. Because British Marine's guarantee claims will not be resolved in this Court, the Court sees no reason to exercise its discretion to dismiss these claims on *forum non conveniens* grounds. A plaintiff is permitted "to invoke the admiralty jurisdiction of federal courts to attach the defendant's property 'according to the usual course of admiralty proceedings,' such as the procedure authorized by Supplemental Rule B, and at the same time to have the merits of the dispute resolved in arbitration." Result Shipping Co., Ltd. v. Ferruzzi Trading USA Inc., 56 F.3d 394, 399 (2d Cir. 1995) (quoting 9 U.S.C. § 8); see also Seatrek Trans PTE Ltd. v. Regalindo Res. PTE Ltd., No. 08 Civ. 551, 2008 U.S. Dist. LEXIS 30578, at *6–7 (S.D.N.Y. Mar. 26, 2008) (denying *forum non conveniens* motion to dismiss maritime attachment proceeding where merits of the dispute would be resolved in another forum).

When, and if, British Marine seeks to apply the security it has attached in this Court towards the satisfaction of a judgment in its favor on the guarantee claims, there will be no inconvenience to any party, and certainly not to any witness because no witness testimony would be required. The merits of the guarantee claims will either be resolved through arbitration in

---

[1] The Court did have to consider whether British Marine's guarantee claims stated a *prima facie* admiralty claim in ruling on defendants' motion to vacate the Rule B attachment. But that issue has been decided, and will not arise again.

London or litigation in India. The Court makes no finding as to which of these fora is more appropriate, because the parties' briefing at best obliquely requests that the Court do so. It is sufficient for present purposes to note that this action is only to obtain jurisdiction over defendants and to provide security for a judgment that British Marine might secure elsewhere. The *forum non conveniens* motion is denied as to the guarantee claims.

The Court also declines to exercise its discretion and dismiss British Marine's *alter ego* claim under *forum non conveniens*. It is true that, as a foreign plaintiff, British Marine's choice of forum receives less deference than that of a plaintiff suing in his own home forum. Iragorri, 274 F.3d at 71. Nor does this action have a particularly strong connection to this District. On the other hand, it does not appear that plaintiff chose this forum for any improper purpose. Rather, "plaintiff's choice of this forum appears to rest primarily on its ability to attach assets of the defendant that pass through this district pursuant to Rule B, a consideration that does not bear the imprimatur of forum shopping." Aracruz, 2009 WL 667298 at *4 (citing Gilbert, 330 U.S. at 508). On balance, British Marine's choice of forum is entitled to limited deference.

Although the parties hotly dispute whether India provides an adequate alternative forum, the Court need not decide this issue. Even assuming the adequacy of an Indian forum, defendants have not shown that the balance of convenience strongly favors dismissal. In reaching this conclusion, the Court has weighed the relative convenience of the alternative forum by considering both private factors – the convenience of the litigants before the Court – and factors relating to the public interest. See Iragorri, 274 F.3d at 73.

As for the private factors, defendants place much emphasis on the fact that the COA was negotiated in India, and several of its potential witnesses involved in the negotiation, execution and performance of the COA are located there. Although, as discussed above, the merits of

British Marine's breach and guarantee claims are not before this Court, testimony concerning the negotiation of the COA and the general course of dealings between the parties could be relevant to British Marine's *alter ego* claims. But British Marine's witnesses on this topic are located either in London or Singapore. Thus, regardless of where British Marine's *alter ego* claims are litigated, some witnesses will have to travel internationally.

Similarly, Anik and Ruchi's corporate records constitute important sources of proof, and it is undisputed that these records are located in India. But Aavanti, whose existence as an independent company is at the core of British Marine's *alter ego* claim, is incorporated in Hong Kong, and British Marine alleges that Aavanti actually operates its business out of Singapore. Relevant sources of proof may therefore also be located in these jurisdictions.

On balance, the private interest factors only weakly favor litigating British Marine's *alter ego* claims in India. Ruchi and Anik's strongest argument is that the witnesses and parties have no connection to this forum, but this argument is discounted by the fact that this case does not have a strong connection to any single forum – the witnesses and evidence are spread across several different countries, including London, India, Singapore and Hong Kong. See Genpharm Inc. v. Pliva-Lachema a.s., 361 F. Supp. 2d 49, 60 (E.D.N.Y. 2005). Litigating in India thus would not "obviate the international travel of documents and witnesses or ensure the availability of compulsory process." Constellation Energy Commodities Grp. Inc. v. Transfield ER Cape Ltd., 801 F. Supp. 2d 211, 220 (S.D.N.Y. 2011). Further, modern technologies have rendered the physical location of documents less relevant to the *forum non conveniens* analysis. See Metito (Overseas) Ltd. v. General Elec. Co., No. 05 Civ. 9478, 2006 WL 3230301, at *6 (S.D.N.Y. Nov. 7, 2006). Finally, defendants do not identify any witnesses who would be

unable or unwilling to testify in the United States, which "is significant, as such identification is generally required for a *forum non conveniens* dismissal." Id. (quotations omitted).

Public interest factors similarly do not weigh in favor of dismissal. As noted, although this dispute lacks a strong connection to the United States, it cannot be described as "local" to any one jurisdiction.[2] However, the presence of Ruchi's money in the Court's registry provides some connection to this District. Further, although the Court deemed this money to belong to Ruchi as an equitable remedy for Wego's violation of the Attachment Order, the Court does not know whether Ruchi has reimbursed Wego for this payment. Consequently, Wego may have an interest in staying apprised of these proceedings; this case therefore "touch[es] the affairs" of Wego, which "is reason for holding the trial in their view and reach rather than . . . where they can learn of it by report only." Iragorri, 274 F.3d at 74 (quoting Gilbert, 330 U.S. at 508-09).

More importantly, it seems that there is simply no efficiency to be gained by dismissing British Marine's *alter ego* claims against Ruchi and Anik. It is undisputed that the *forum non conveniens* motion would not impact British Marine's claim against Aavanti. Thus, some claims will remain pending in this Court regardless of how the *forum non conveniens* motion is resolved. Further, British Marine must in any event prevail in arbitration against Aavanti before it can prevail on its *alter ego* claims against Ruchi and Anik. Granting *forum non conveniens* dismissal would thus require that British Marine, after succeeding in arbitration in London, bring an action asserting *alter ego* liability in India; after that, the parties would have to return to this Court to litigate the effect of the Indian *alter ego* judgment on British Marine's entitlement to the

---

[2] Many of the traditional public interest factors, see Iragorri, 274 F.3d at 74, are inapplicable in this case. For example, this is a non-jury admiralty case, so the consideration that the burden of jury duty should not be imposed on communities with little connection to the litigation does not apply; similarly, the Court has already ruled that federal common law will apply to plaintiff's *alter ego* claims, rendering concerns about applying foreign law inapplicable.

7

funds in the Court's registry.[3]  This could take years, and would be the height of inefficiency. On the other hand, if the Court retains the action, the question of whether British Marine is entitled to the funds it has attached can be resolved expeditiously after the conclusion of the arbitration in London.  Defendants' motion to dismiss for *forum non conveniens* is therefore denied.[4]

## II. Motion to Stay

Aavanti moves to stay all of British Marine's claims pending the outcome of the London arbitration between Aavanti and British Marine.[5]  It moves to stay British Marine's claim against Aavanti – alleging breach of the COA – under the FAA, 9 U.S.C. §§ 3 & 4, and British Marine's claims against Ruchi and Anik – the guarantee and *alter ego* claims – under the Court's inherent power to control its docket.  Ruchi and Anik join Aavanti's motion as to the latter two claims.

It seems that British Marine does not actually oppose a stay of its claim against Aavanti pending the arbitration in London.  Rather, British Marine argues that it does not seek to litigate the merits of that claim before this Court, and that a stay is therefore unnecessary.  If there is a distinction between this argument and a concession that the claims against Aavanti should be stayed, it is not apparent.  In any event, British Marine's claims against Aavanti are clearly "referable to arbitration" under the terms of the COA, and are therefore stayed pending resolution of the London arbitration.  See 9 U.S.C. § 3.

---

[3] That is because the Court would condition any *forum non conveniens* dismissal on maintenance of the Rule B attachment.  See Aracruz, 2009 WL 667298 at *7-8 (collecting cases).

[4] Because the Court denies defendants' *forum non conveniens* motion, plaintiff's motion for discovery to supplement its opposition to that motion at [105] is denied as moot.

[5] Although Aavanti styles its motion as a motion to stay "or dismiss," its briefing contains no legal argument in support of dismissal.  To the extent defendants seek dismissal of this security action in light of the pending arbitrations in London, the motion is denied.  See The Anaconda v. American Sugar Refining Co., 322 U.S. 42, 64 S. Ct. 863 (1944).

As for the claims against Ruchi and Anik, defendants move to stay these claims under the Court's inherent power to control its docket, rather than the FAA. Even where a claim is not subject to the FAA, a district court "may stay a case pursuant to 'the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" WorldCrisa Corp. v. Armstrong, 129 F.3d 71, 76 (2d Cir. 1997) (quoting Nederlandse Erts–Tankersmaatschappij, N.V. v. Isbrandtsen Co., 339 F.2d 440, 441 (2d Cir. 1964)). Defendants bear the burden of showing that British Marine will not be prejudiced by an extension of the stay to them, and that the balance of hardships and interests of judicial economy favor an extension. See Nederlandse, 339 F.2d at 442.

As for the guarantee claims, although its briefing is not entirely clear, it again appears that British Marine is arguing that a stay is unnecessary because the guarantee claims are subject to arbitration in London. Again, this argument appears to be the functional equivalent of a concession that the guarantee claims should be stayed. These claims are therefore stayed pending resolution of the London arbitration between Aavanti and British Marine.[6]

British Marine focuses its opposition to a stay on its *alter ego* claims against Ruchi and Anik, the only claims it seeks to litigate on the merits in this Court. British Marine argues at some length that its *alter ego* claims are not referable to arbitration. But the Court does not understand defendants to be arguing to the contrary. Defendants have not moved to compel arbitration of the *alter ego* claims nor stay them under the FAA, but rather for a stay under the Court's inherent power to control its docket.

---

[6] Because defendants did not invoke the FAA in seeking to stay British Marine's guarantee claims, the Court grants this stay under its inherent power to control its docket. As British Marine seeks to arbitrate the merits of its guarantee claims in any event, staying these claims causes it no hardship.

9

Defendants correctly point out that British Marine must prevail in its arbitration against Aavanti in order to succeed on any of its remaining claims – Ruchi and Anik cannot be held liable as guarantors or *alter ego*s of Aavanti if British Marine fails to demonstrate that Aavanti breached the COA in the first place. The fact that the London arbitration may entirely moot British Marine's remaining claims is sufficient reason to grant a stay. See, e.g., <u>Limonium Mar., S.A. v. Mizushima Marinera, S.A.</u>, 961 F. Supp. 600, 610 (S.D.N.Y. 1997) (staying claims against *alter egos* while issue of primary liability is arbitrated); see also <u>Builders Fed. (Hong Kong) Ltd. v. Turner Const.</u>, 655 F. Supp. 1400, 1407 (S.D.N.Y. 1987) (granting stay where "arbitration may well limit or narrow the issues" before the Court). Judicial economy clearly favors a stay.

It is equally clear that staying British Marine's *alter ego* claims works no prejudice. British Marine argues that it would be prejudiced by any delay in resolving its *alter ego* claims, but does not explain how beyond characterizing the motion to stay as a "backdoor attempt to pressure Plaintiff into the Indian litigation." The Court does not see how that is so, especially now that the *forum non conveniens* motion has been denied. Even if, hypothetically, the Court were to rule today that Ruchi and Anik were *alter egos* of Aavanti, British Marine would still have to prevail against Aavanti in the London arbitration before it could recover anything. Allowing Aavanti's primary liability to be arbitrated before proceeding further on the *alter ego* claims thus works no prejudice to plaintiff.

This absence of prejudice to British Marine is outweighed by the potential expense incurred by defendants in engaging in broad discovery on claims that may be ultimately be mooted, and the burden on the Court in issuing what would amount to an advisory opinion as to defendants' *alter ego* status. Further litigation on British Marine's *alter ego* claims, including

10

discovery, is therefore stayed pending resolution of the arbitration between Aavanti and British Marine in London.

## III. Motion to Strike

British Marine moves, pursuant to Rule 12(f), to strike several affirmative defenses asserted by Ruchi and Anik in their Answer. Specifically, British Marine moves to strike: the Second Affirmative Defense, asserting lack of personal jurisdiction; the Third Affirmative Defense, asserting lack of subject matter jurisdiction; the Fourth Affirmative Defense, asserting lack of *quasi-in-rem* jurisdiction; the Fifth Affirmative Defense, asserting lack of *in rem* jurisdiction; the Sixth Affirmative Defense, asserting improper service; and the Seventh Affirmative Defense, asserting improper venue. British Marine argues that these defenses should be stricken as waived. Ruchi and Anik have consented to withdraw the Third Affirmative defense, lack of subject matter jurisdiction, but otherwise oppose the motion.

For the purposes of this motion, it is necessary to further detail the procedural background of this case. Ruchi and Anik first appeared in this action via a restricted appearance as authorized by Rule E(8) of the Supplemental Rules, stating that they were appearing "for the sole purpose of seeking an Order vacating the Court's Order for Issuance of Process of Maritime Attachment and Garnishment dated February 20, 2013 (and any such Order subsequently issued), and to dismiss the Amended Verified Complaint in Admiralty." Subsequently, Ruchi and Anik moved to vacate the Attachment Order and dismiss the complaint, pursuant to Supplemental Rule E(4)(f) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. After the Court denied that motion, Ruchi and Anik filed an Answer that asserted the affirmative defenses in question.

Unlike the Federal Rules of Civil Procedure, which have "abolished the technical distinction between general and special appearances," <u>China Nat. Chartering Corp. v. Pactrans</u>

11

Air & Sea, Inc., 882 F. Supp. 2d 579, 589 (S.D.N.Y. 2012), Rule E(8) of the Supplemental Rules expressly provides that:

> An appearance to defend against an admiralty and maritime claim with respect to which there has issued process in rem, or process of attachment and garnishment, may be expressly restricted to the defense of such claim, and in that event is not an appearance for the purposes of any other claim with respect to which such process is not available or has not been served.

Rule E(8) is intended to allow a "defendant whose appearance is obtained by attachment to avoid the dilemma of either defending the attached property by generally appearing and thus risking a loss greater than the value of the property, or letting it go by default." Teyseer Cement Co. v. Halla Mar. Corp., 794 F.2d 472, 478 (9th Cir. 1986). "It is clear that a defendant or owner entering a restricted appearance to an *in rem* or *quasi in rem* maritime proceeding can vigorously defend the merits of the claim against him without converting his restricted appearance into a general appearance." Id.

That is exactly what defendants did here. Far from consenting to jurisdiction, defendants have vociferously argued that this Court lacks jurisdiction over them at every opportunity. Indeed, the facts here are similar to those underlying Teyseer. In Teyseer, the defendant entered a restricted appearance under Supplemental Rule E(8), and then moved to dismiss for improper venue and *forum non conveniens*. The Ninth Circuit nevertheless rejected the argument the defendant had waived its objections to personal jurisdiction:

> [Defendant] did not move for dismissal based on lack of personal jurisdiction, but it had no reason to do so. [Defendant] entered a restricted appearance below to allow it to appear and protect its interest in the res that had been attached. [Defendant's] restricted appearance indicated that it did not consent to personal jurisdiction. We hold that by entering a restricted appearance [defendant] objected to *in personam* jurisdiction as effectively as it could have through a motion to dismiss on that ground.

Id. at 478.

This reasoning is persuasive here. In Rule B attachment proceedings like this one, the Court's jurisdiction is *quasi-in-rem*, predicated upon the presence of the defendants' property within this Court's territorial reach. See Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd., 585 F.3d 58, 69 n.12 (2d Cir. 2009). Indeed, the requirement of Supplemental Rule B(1)(a) that a defendant not be "found" within the District "contemplates that a court will lack *in personam* jurisdiction over the defendant when it orders that a writ of attachment be issued." Id. "In such a proceeding, the court's coercive authority is coterminous with the scope of its jurisdiction, and limited to the extent of the defendant's interest in the attached property; that authority does not extend to the exercise of *in personam* jurisdiction over a Rule B defendant." Id.

Thus, like the defendant in Teyseer, Ruchi and Anik had no reason to move to dismiss for lack of personal jurisdiction. Instead, defendants entered a restricted appearance solely in order to attack the adequacy of British Marine's allegations in support of Rule B attachment. "Claimants may appear under Rule E(8) without submitting themselves to general *in personam* liability beyond the value of their interest in the *res*." U.S. v. Marunaka Maru No. 88., 559 F. Supp. 1365, 1370-71 (D. Alaska 1983). Although "[a] restricted appearance does not preserve jurisdictional defenses to the original claims that prompted claimant's appearance," id., defendants here properly challenged the Court's *quasi-in-rem* jurisdiction by their subsequent motion. British Marine's argument that defendants waived jurisdictional objections by not specifically mentioning jurisdiction in their restricted appearance is unpersuasive, because "there is no prescribed form that making an appearance under Supplemental Rule E(8) must take." Custer v. M/V SEA BIRD, No. 08–61780, 2009 WL 901509, at *3-4 (S.D. Fla. Mar. 31, 2009).

13

British Marine argues that regardless of their initial restricted appearance, Ruchi and Anik waived the affirmative defenses at issue when it moved to vacate the Rule B attachment and dismiss the Complaint under both Supplemental Rule E(4)(f) and Federal Rule of Civil Procedure 12(b)(6), rather than only the former. Because the motion cited 12(b)(6) but no other provisions of Rule 12(b), British Marine argues that defendants waived any defenses under Rules 12(b)(2)-(5) pursuant to Rule 12(h)(1). Teyseer at least implies that a defendant in a Rule B proceeding who has entered a restricted appearance pursuant to Supplemental Rule E(8) would not necessarily waive an objection to personal jurisdiction by moving to dismiss on other grounds. See Teyseer, 794 F.2d at 474, 478 (defendant moved to dismiss for improper venue without waiving objection to personal jurisdiction). Other courts have applied Rule 12(h)(1), at least by analogy, to the waiver of jurisdictional objections in admiralty actions *in rem*, see U.S. v. Republic Marine, Inc., 829 F.2d 1399, 1402 (7th Cir. 1987) (collecting cases), but the parties have not cited any case law directly addressing the procedural context presented here.[7]

Regardless of the effect of their prior restricted appearance, Ruchi and Anik's motion to vacate the attachment and dismiss did not waive any defenses. "[T]o preserve the defense of lack of personal jurisdiction, a defendant need only state the defense in its first responsive filing and need not articulate the defense with any rigorous degree of specificity." Mattel, Inc. v. Barbie-Club.com, 310 F.3d 293, 307 (2d Cir. 2002). Defendants emphatically did move the

---

[7] British Marine's reliance upon Trans-Asiatic Oil Ltd., S.A. v. Apex Oil Co., 804 F.2d 773 (1st Cir. 1986), is misplaced. There, although the defendant initially entered a restricted appearance, after the Rule B attachment was upheld, the defendant consented to the court's jurisdiction in a pretrial order "without jurisdictional reservation, appeared generally, and defended the claim fully on the merits." Id. at 778. Although the defendant's "initial entry of a restricted appearance manifested its lack of consent to personal jurisdiction," defendant later waived its personal jurisdiction objection by consenting to jurisdiction. Id. at 779. Further, the First Circuit made clear that "[w]e do not hold that Apex's general appearance automatically nullified its jurisdictional defenses. We hold only that Apex's consent to the language in the pretrial order amounted to a waiver of its jurisdictional reservation." Id. Similarly, the defendants in Navieros Inter-Americanos, S.A. v. M/V Vasilia Exp., 120 F.3d 304, 317 (1st Cir. 1997), expressly "waived the requirement of service of process and waived all defenses related to personal jurisdiction."

Here, defendants have neither appeared generally nor said or done anything that might reasonably be construed as consent to this Court's jurisdiction.

Court to dismiss for lack of jurisdiction, arguing at length that, *inter alia*, plaintiff had not attached any property in this District belonging to defendants, and that the Court therefore lacked Rule B *quasi-in-rem* jurisdiction over them and must vacate the attachment and dismiss the Complaint. British Marine's position that defendants waived any objection to *quasi-in-rem* jurisdiction is therefore particularly odd; lack of *quasi-in-rem* jurisdiction was the core of defendants' motion, and this Court necessarily considered and rejected the merits of this argument.

The lack of specific citation to Rule 12(b)(2) in the motion to dismiss is immaterial given that the substance of defendants' objections to jurisdiction was argued at length. See, e.g., All Energy Corp. v. Energetix, LLC, No. 4:11–CV–00617, 2012 WL 9516125, at *5 (S.D. Iowa Nov. 14, 2012). British Marine cannot claim to have lacked notice that defendants objected to jurisdiction. To the extent British Marine means to argue that defendants waived any objection to personal jurisdiction by focusing their arguments on *quasi-in-rem* jurisdiction, that argument is without merit. The difference between the two is merely semantic for the purposes of Rule 12. See Newhard, Cook & Co. v. Inspired Life Centers, Inc., 895 F.2d 1226, 1228 n.2 (8th Cir. 1990). Defendants were correct to focus on the type of jurisdiction actually alleged, and in any event, their motion did mention at several points that the Court lacked personal jurisdiction absent a valid Rule B attachment, and dismissal would be required upon vacatur of the attachment. Defendants' motion also argued that service was improper and thereby preserved that objection, although the Court did not find it necessary to reach that argument in its prior decision.

In sum, defendants have not forfeited or waived any affirmative defenses, jurisdictional or otherwise. In considering whether a waiver or forfeiture has occurred, "a court must consider

15

all of the relevant circumstances." Pactrans, 882 F. Supp. 2d at 588 (quoting Mattel, Inc., 310 F.3d at 307). This is a *quasi-in-rem* action in which Ruchi and Anik have consistently attacked the Court's jurisdiction at every turn. Defendants first entered a restricted appearance as permitted under Supplemental Rule E(8), stating that they were appearing solely to move to vacate the attachment and dismiss the Complaint. They then did so, explicitly arguing that this Court lacked jurisdiction. After that motion was denied, they filed an Answer that reiterated their objections. Far from waiving any defenses, defendants have made their objections to jurisdiction clear from the very start.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss the Second Amended Complaint on the grounds of forum non conveniens at [79] and plaintiff's motion to strike affirmative defenses at [101] are denied. Plaintiff's motion for discovery to supplement its opposition to the *forum non conveniens* motion at [105] is denied as moot. Defendants' motion to stay at [74] is granted. At six month intervals beginning from the date of this Order, the parties will report as to the status of the London arbitration between Aavanti and British Marine, and whether there has been any resolution that warrants reconsideration of the stay.

**SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　U.S.D.J.

Dated: Brooklyn, New York
　　　　June 3, 2014